IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ANNETTE FUENTES,**

      **Plaintiff,**

vs.                                                  No. CIV 00-0267 JC/LCS

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

      **THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 6), filed August 22, 2000. The Commissioner of Social Security issued a final decision denying Plaintiff's application for disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is not well-taken and recommends that it be **DENIED**.

### PROPOSED FINDINGS

      1.      Plaintiff, now forty-two years old, filed her application for disability insurance benefits on February 14, 1996, and her application for supplemental security income on April 10, 1996, alleging disability commencing October 1, 1993, due to back pain. (R. at 48-50; 168-71.) She has a tenth grade education. (R. at 77.) Her past relevant work was as a fast food worker, auto parts delivery person, assistant housekeeper and biscuit maker. (R. at 22; 81-84; 147.)

2.      Plaintiff's application for disability insurance benefits was denied at the initial level on April 9, 1996, (R. at 34-37), and at the reconsideration level on May 15, 1997.  (R. at 40-42.)  Her supplemental security income application was denied initially on July 16, 1996, (R. at 172) and on reconsideration on May 15, 1997.  (R. at 173-176.)  Plaintiff appealed the denial of her applications by filing a Request for Hearing by Administrative Law Judge (ALJ) on July 10, 1997.  (R. at 43-44.)  The ALJ held a hearing on February 11, 1998, at which Plaintiff testified and was represented by counsel.  (R. at 184.)

3.      The ALJ issued his decision on April 20, 1998.  (R. at 22-29.)  The ALJ determined that Plaintiff had disability insured status through September 30, 1993.  (R. at 22.)  The ALJ analyzed Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993).  At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 1, 1993.  (R. at 23.)  At the second step, the ALJ determined that Plaintiff had a severe impairment of vertebrogenic disorders affecting her lumbar spine.  (R. at 23; 28.)  At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairment had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599.  (R. at 26-27.)  The ALJ then found that Plaintiff had the residual functional capacity for at least light work.  (R. at 28-29.)  The ALJ determined that Plaintiff's past relevant work as a housekeeper did not entail an exertional capacity for more than light work and that Plaintiff was able to perform her past relevant work as a housekeeper.  (R. at 29.)  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

4.     Plaintiff filed a request for review of the ALJ's decision, (R. at 15-18), and submitted additional evidence to the Appeals Council. (R. at 181-183.) On December 21, 1999, the Appeals Council, after considering the additional evidence, denied the request for review. (R. at 6-7.) Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Plaintiff seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g). On February 24, 2000, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

5.     The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

6.     In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See Thompson v. Sullivan*, 987 F. 2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).

7.     At the first four levels of the sequential evaluation process, the claimant must show

she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See id.*

**Administrative Record**

8. On September 23, 1990, while working at the Elephant Butte Inn as an assistant housekeeper, Plaintiff sustained an on-the-job back injury. (R. at 120.) Following her injury, Plaintiff underwent conservative treatment with Dr. Stoops, Dr. Divan and Dr. Wayne Watson. (*Id.*) On January 13, 1992, she was evaluated by Dr. Michael McCutcheon, M.D., an orthopedic surgeon. (*Id.*) At that time, she was not working and had not received follow-up care since September 24, 1991 (*Id.*) Dr. McCutcheon diagnosed a herniated nucleus pulposus at L4 and degenerative lumbar disc disease at L5. (R. at 122.) Dr. McCutcheon explained the risks of surgery and gave Plaintiff an impairment rating of 12% without surgery. (R. at 123.)

9. On February 27, 1992, Dr. McCutcheon performed a left L4-5 laminotomy and left L4 disc excision on Plaintiff without complication. (R. at 104-05.) After surgery, Plaintiff was still experiencing pain. (R. at 106-111.) On July 31, 1992, Plaintiff received a facet injection which relieved the pain for two days. (R. at 113.) Dr. McCutcheon diagnosed mild lumbar spondylosis and stated she would not benefit from further treatment. (*Id.*) Dr. McCutcheon gave Plaintiff a 12% impairment rating and released her to work in a "light sedentary role." (*Id.*)

10.     On October 30, 1992, Dr. McCutcheon noted that a facet injection allowed some relief and the pain medication was working. (R. at 111.) However, Plaintiff was still having pain in he left anterior thigh and left hip. (*Id*.) On November 13, 1992, an enhanced MRI showed a small left-side recurrent L4 disc herniation, which Dr. McCutcheon described as "minimal at best." (R. at 109.) Dr. McCutcheon advised against additional surgery and concluded that Plaintiff had reached maximum medical improvement. (*Id*.)

11.     Dr. Joseph Ford, M.D., an orthopedic surgeon, initially saw Plaintiff on September 28, 1995 for back pain. (R. at 131;134.) Dr. Ford diagnosed lumbar degenerative disc disease, status post laminectomy and disc excision with narrowing of the L4-5 disc space and mechanical low back pain. (*Id*.) On December 19, 1995, Plaintiff reported to Dr. Ford that she had been in an automobile accident on October 25, 1995. (R. at 131.) Dr. Ford wrote that Plaintiff was a passenger in a car that was hit on the right back.[1] (*Id*.) As a result of the accident, Plaintiff hit the door and her husband, who was driving. (*Id*.) Plaintiff told Dr. Ford that the accident aggravated her lower back pain. (*Id*.) Dr. Ford assessed an aggravation of her lumbar degenerative disc disease with increasing symptoms. (R. at 132.)

12.     On February 13, 1996, Dr. Ford observed that a December 27, 1995 MRI showed a very narrowed L4, 5 disc as well as degeneration and fragmentation of the L5-S1 disc. (R. at 128.) Dr. Ford concluded that both of these processes were contributing to Plaintiff's back pain. (*Id*.)

13.     On April 10, 1997, Dr. John Allen, M.D., an orthopedic surgeon, performed a consultative examination. (R. at 146.) Plaintiff told Dr. Allen that she could sit for one hour, stand

---

[1] Plaintiff testified at the administrative hearing that she was driving when a postal vehicle rear ended her. (R. at 192-193.)

for forty-five minutes, walk two blocks and lift and carry ten pounds. (*Id*.) Plaintiff showed positive three out of five Waddell's signs for symptom magnification.[2]

14.  On June 27, 1996, Dr. Ford wrote that Plaintiff's lumbar spine condition was clearly aggravated by the October, 1995 motor vehicle collision. (R. at 162.) Dr. Ford planned a course of conservative treatment for several months in an effort to reach maximum medical improvement and warned that an additional MRI scan might be necessary to see if there was a significant change due to the automobile accident. (*Id.*) Dr. Ford opined that Plaintiff was disabled from any type of work at that time. (*Id*.)

15.  On November 26, 1996, Dr. Ford wrote in a letter to Plaintiff's counsel that the October 1995 automobile accident aggravated her condition and that a small left lateral disc herniation could have been caused by the accident. (R. at 166.) Dr. Ford stated that additional surgery might be necessary and prescribed a lubrosacral belt. (R. at 166-67.) In Dr. Ford's opinion, Plaintiff had been able to work before the October 1995 automobile accident, but not after. (R. at 167.)

16.  On April 9, 1996, Dr. Nancy Nickerson, M.D. completed a residual functional capacity assessment questionnaire. (R. at 138-145). Dr. Nickerson found that Plaintiff was able to lift up to 20 pounds occasionally and ten pounds frequently, sit for six hours out of an eight-hour workday and stand or walk for six hours out of an eight-hour workday, (R. at 139), and could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 140.)

17.  Plaintiff testified that she had received a closed period of disability, which ended in

---

[2] Waddell's signs indicate non-organic causes of pain due to deliberate deception on part of the patient or to malingering (sympathy) motivation caused by psychosomatic disorders. *See* P. Douglas Kiester, MD, and Alexander D. Duke, MD, Is it Malingering, or is it "Real?", POSTGRADUATE MEDICINE, December 1999.

July 1992. (R. at 192.) Since that time, the only occurrence that significantly impacted her condition was the October 1995 auto accident. (R. at 1920.) With respect to the October 25, 1995 automobile accident, Plaintiff testified that she was driving when a postal vehicle rear ended her. (R. at 192-93.) She experienced pain in her neck and back immediately upon impact. (R. at 194.) Plaintiff was not working at the time of the automobile accident. (R. at 196.) She tried to go back to work at Dairy Queen, but was prevented by pain from performing the functions of the job. (R. at 197.) Plaintiff testified that her pain had increased since the accident and affected her when she tried to do housework. (R. at 198; 200.) She is able to do housework such as vacuuming and sweeping, but paid her friend to come over and move the furniture for her because she is not able to move it herself. (R. at 200-201.) Plaintiff testified that she had difficulty putting on her socks and shoes, but was able to walk three blocks without stopping and pick up a gallon of milk from chest height, but not from the floor. (R. at 201- 202) She testified that she was able to drive short distances. (R. at 202.) Plaintiff had applied for jobs but was not hired due to her back injury. (R. at 203.)

  18. After the ALJ issued his decision, Plaintiff submitted additional evidence that was included in the record and considered by the Appeals Council. This additional evidence consisted of two letters from Dr. Ford and an MRI report. (R. at 181-83.) On July 7, 1998, Dr. Ford wrote that Plaintiff was more disabled than she had been when he last saw her. (R. at 181.) An MRI performed on July 23, 1998, showed an increased degeneration of the L4-5 disc with spur formation, narrowing, sclerosis, lateral recess stenosis, and a disc herniation at L4-5 and a degenerated disc at L5-S1. (R. at 182-83.)

**Discussion**

  19. Plaintiff contends that the Appeals Council erred in denying her request for review.

In determining whether substantial evidence supports the Commissioner's decision, a court must examine the record as a whole, including the additional materials submitted to the Appeals Council. *See O'Dell v. Shalala*, 44 F. 3d 855, 858, 859 (10th Cir. 1994).  The new evidence, consisting of Dr. Ford's two letters and the MRI report, were considered by the Appeals Council, which determined that the new evidence did not provide a basis for changing the ALJ's decision.  Evidence presented to the Appeals Council is considered only to the extent that it is new, material and relevant to the pertinent time period.  *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *O'Dell*, 44 F.3d at 859.  Here, the new evidence does not require a change in the ALJ's determination because it "remains supported by substantial evidence."  *See O'Dell*, 44 F.3d at 859.  The ALJ analyzed Dr. Ford's prior findings.  The new evidence simply reiterates those findings, but it does not contradict the ALJ's conclusions.  Based on a review of the administrative record, I conclude that substantial evidence supports the Commissioner's determination that claimant is not disabled within the meaning of the Social Security Act.

20.     Moreover, to the extent that the new evidence indicates the Plaintiff's condition is deteriorating, it is outside the relevant time period.  Proffered new evidence must be related to the time period for which the benefits were denied.  *See Hargis v. Sullivan*, 945 F. 2d 1482, 1493 (10thCir. 1991) (*citing Johnson v. Heckler*, 767 F. 2d 180, 183 (5th Cir. 1985)).  In this case, the letters and MRI report is outside the relevant time period because they were done after the time period considered by the ALJ, *i.e.*, the time period ending April 20, 1998, the date of the decision.  If her condition has deteriorated since the ALJ issued his decision, Plaintiff may wish to file a new application.  *See Johnson*, 767 F. 2d at 183.  Relief is not warranted on this first ground.

21.     Plaintiff contends that the ALJ failed to give proper weight to the opinions of her

treating physicians. A treating physician may offer an opinion which reflects a judgment about the nature and the severity of a claimant's impairments. *See Castellano v. Secretary*, 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ must give controlling weight to this type of opinion if it is well supported by clinical and laboratory diagnostic techniques and it is not inconsistent with other substantial evidence in the record. *See id.* However, a treating physician's opinion is not dispositive on the issue of disability because final responsibility for determining the ultimate issue of disability rests with the Commissioner. *Id.*

22. On July 31, 1992, Dr. McCutcheon gave Plaintiff a 12% impairment rating and released her to work in a "light sedentary role." (R. at 113.) Thus, the ALJ's finding that Plaintiff was able to perform light work is consistent with Dr. McCutcheon's opinion. On November 26, 1996, Dr. Ford wrote that Plaintiff had been able to work before the October 25, 1995 automobile accident, but not after. (R. at 167.) Dr. Ford also thought that a small left lateral disc herniation could be a new finding caused by the automobile accident. (R. at 166.) However, Dr. McCutcheon had recorded this same finding on November 13, 1992, and described the left lateral herniation as "minimal at best." (R. at 109.)

23. In assessing proper weight to accord the opinion of a treating physician the ALJ must evaluate, *inter alia*, the degree to which the physician's opinion is supported by relevant evidence, the consistency between the opinion and the record as a whole, and other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Goatcher v. Shalala*, 52 F.3d 288, 290 (10th Cir. 1995). In this case, the ALJ considered the fact that Dr. Ford's opinion was inconsistent with the record as a whole, unsupported by clinical or laboratory findings and contradicted by Dr. McCutcheon, another treating physician. The ALJ properly disregarded Dr. Ford's opinion that

9

plaintiff was disabled.  Plaintiff's contention that the ALJ failed to give proper weight to the opinions of her treating physicians is without merit.

24. Plaintiff asserts that the ALJ erred in assessing her credibility.  "Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence.  *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990).  Plaintiff established that she suffers from a pain-producing impairment.  Therefore, the ALJ was required to consider her complaints of pain by evaluating her use of pain medication, her attempts to obtain relief, the frequency of her medical contacts, and the nature of her daily activities, as well as subjective measures of credibility including the consistency or compatibility of non-medical testimony with the objective medical evidence.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995).

25. The ALJ properly considered the *Kepler* factors in assessing Plaintiff's credibility.  He discussed Plaintiff's failure to seek treatment, the inconsistency of her statements regarding the degree of her impairment, her ability to perform daily activities and Dr. Allen's findings of positive Waddell's signs indicating symptom magnification.  (R. at 26-27.)  The record contains inconsistent versions of the same October 25, 1995 automobile accident. (R. at 131;192-93.)  Moreover, the ALJ had the opportunity to observe Plaintiff's demeanor and manner of testifying at the hearing.  "[T]he determination of credibility is left to the observations made by the Administrative Law Judge as the trier of fact." *Broadbent v. Harris*, 698 F. 2d 407, 413 (10th Cir. 1983).  After observing Plaintiff's testimony at the hearing, the ALJ determined that Plaintiff's subjective complaints and functional limitations were not supported by the evidence as a whole to the disabling degree alleged and therefore lacked credibility.  A review of the record establishes that the ALJ's findings are accurate

and entirely consistent with the record.  The ALJ applied correct legal and standards and substantial evidence supports his determination that Plaintiff's complaints of disabling pain lacked credibility.

26.    The ALJ's finding that Plaintiff is not disabled because she can return to her past relevant work is supported by substantial evidence and is in accordance with the law.

## RECOMMENDED DISPOSITION

The ALJ applied the correct legal standards and the decision is supported by substantial evidence.  I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 6), filed August 22, 2000, be denied, the decision of the ALJ affirmed, and this case dismissed.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**